UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| VARSITY WIRELESS, LLC,<br>    Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | C.A. No. 15-11833-MLW |
| BOXFORD ZONING BOARD OF<br>APPEALS ET AL.,<br>    Defendants. | )<br>)<br>)<br>) | |

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                             September 22, 2017

In this action, plaintiff Varsity Wireless, LLC ("Varsity") challenges the Town of Boxford's denial of Varsity's application for a special permit and dimensional variances for the construction and operation of a wireless communication facility (the "Facility"). Specifically, Varsity is suing the Town of Boxford (the "Town"), Boxford Zoning Board of Appeals (the "Board"), and Board members Kathleen O'Sullivan Fortin, Barbara Jessel, and David Peterson on May 12, 2015, alleging that the denial violated Section 704 of the Telecommunications Act of 1996, 47 U.S.C. §332(c)(7) (the "TCA"), which requires that any decision by a local government "to deny a request to place, construct, or modify personal wireless service facilities:" (a) be "in writing and supported by substantial evidence contained in a written record;" and (b) not "have the effect of prohibiting the provision of

personal wireless services." Varsity also alleges that the denial violated state law.

The court referred the case to Magistrate Judge Jennifer Boal for pretrial purposes, including a report and recommendation on dispositive motions. On September 9, 2016, Magistrate Judge Boal allowed certain abutters and immediate neighbors to the proposed Facility to intervene. On September 7, 2016, Varsity moved for partial summary judgment on Count 2 of the Amended Complaint, which alleges that the Defendants' denial of Varsity's application is not supported by substantial evidence, in violation of 47 U.S.C. § 332(c)(7)(B)(iii). Defendants, joined by the intervenors, opposed.

On October 12, 2016, Varsity filed a motion to strike certain evidence submitted by defendants with its opposition, arguing that the evidence was not part of the administrative record of the hearings before the Board and, therefore, could not be considered in reviewing the Board's decision.

On July 26, 2017, defendants moved for the Magistrate to defer consideration of the motion for summary judgment until discovery was closed and defendants filed their own motions for summary judgment. They stated that "summary judgment must wait until discovery discloses whether Varsity is a party in interest or otherwise has 'statutory standing' to prosecute TCA claims." See Docket No. 18-19.

On August 23, 2017, Magistrate Judge Boal issued a report recommending that the motion to strike be allowed in part and denied in part, and that the motion for summary judgment be denied. In determining whether substantial evidence supports an administrative agency's decision, the court may only consider "the administrative record, absent a claim of procedural irregularity." Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 22 (1st Cir. 2002). The Magistrate Judge found that Docket Nos. 54-10,[1] 54-11,[2] and 54-12[3] are relevant to Varsity's legal interest in the building site and, therefore, to whether Varsity has standing in this court. Accordingly, she found that those documents may be considered in deciding the jurisdictional question even if they were not part of the administrative record. In addition, Varsity did not move to strike first two paragraphs of the affidavit of Samuel Perkins, Esq. (Docket No. 54-1) or the documents to which they refer (Docket No. 54-3, Docket No. 54-4, Docket No. 54-5, Docket No. 54-13, and Docket No. 54-14). However,

---

[1] Varsity's lease agreement with Martin D. Sholomith for 346 Congress St., Unit 703, Boston, MA.

[2] Assignment and Assumption Agreement between Varsity and Varsity Wireless Investors, LLC.

[3] Affidavit of Michael Cassidy.

the Magistrate Judge struck the rest of the exhibits submitted by defendants, which were not part of the administrative record.

The Magistrate Judge recommended that the motion for summary judgment be denied without prejudice. As an initial matter, she found that "Varsity has standing to bring this action under the TCA." R&R at 13. However, she also found that the parties did not submit the complete record that the Board considered in its decision to deny Varsity's application for a variance. In reviewing the decision of an administrative agency, the court must consider "the record as a whole." Universal Camera Corp. v. NLRB, 340 U.S. 474, 490 (1951);[4] see also Nextel Commc'ns of the Mid-Atlantic v. Town of Brookline, 520 F. Supp. 2d 238, 248 (D. Mass. 2007). Because the record is incomplete, she concluded that the court is "unable to determine whether the Board's decision is supported by substantial evidence" and, therefore, recommended that the motion for summary judgment be denied without prejudice.

The time period for objections to the Report and Recommendation has expired. Varsity did not file any objections. Therefore, it is not entitled to review of the Report and

---

[4] The Court in Universal Camera interpreted the Administrative Procedure Act. Nevertheless, the TCA's "substantial evidence" standard of review is the same standard, which is the standard "traditionally applicable to a review of an administrative agency's findings of fact." Second Generation Properties, L.P. v. Town of Pelham, 313 F.3d 620, 627 (1st Cir. 2002).

Recommendation. Borden v. Sec'y of Health & Human Servs., 836 F. 2d 4, 6 (1st Cir. 1987); Thomas v. Arn, 474 U.S. 140, 149-50 (1985). In any event, the court has reviewed the Magistrate Judge's reasoning and finds it to be thorough, thoughtful, and persuasive. Therefore, the recommendation to deny the plaintiff's motion for summary judgment without prejudice is being adopted.

Defendants timely objected to the Magistrate Judge's recommendation that Varsity has standing. They request that the court not adopt that recommendation because the issue of standing "was not presented by motion, briefed or argued, and was not necessary to the Magistrate's recommended disposition." Objection at 2. The court is denying the objection. The court has the independent obligation to determine subject matter jurisdiction even without a Rule 12(b)(1) motion to dismiss. See Am. Airlines, Inc. v. Cardoza-Rodriguez, 133 F. 3d 111, 115 n. 1 (1st Cir. 1998). In essence, the court must satisfy itself that it has subject-matter jurisdiction before it can decide the merits of the case. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998). As explained below, the Magistrate Judge correctly considered the question of subject matter jurisdiction and determined that Varsity has standing in the absence of any challenge to the jurisdictional facts alleged in the complaint.

To establish standing, the plaintiff must first show that there is a "case" or "controversy" within the meaning of Article

III, §1 of the United States Constitution. It must satisfy the "set of requirements that together make up the 'irreducible constitutional minimum of standing.'" Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1386 (2014). Plaintiff must have suffered or be imminently threatened with a concrete and particularized "injury in fact" that is fairly traceable to the challenged actions of the defendants and likely to be redressed by a favorable judicial decision. Id. at 1386 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Courts may, however, in limited circumstances, decline to adjudicate claims on "prudential" grounds such as "the general prohibition on a litigant's raising another person's legal rights" and "the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches." Id.

Finally, most relevant here, the plaintiff's stake in the controversy must "fall within the zone of interests protected by the law invoked." Id. at 1388. This requires the court "to determine, using traditional statutory-interpretation tools, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." Id. at 1387. Varsity alleges claims under the TCA, which authorizes "any person adversely affected by a final action or failure to act by a State or local government or any instrumentality thereof...[to] commence an action in any court of competent jurisdiction." 47 U.S.C. §332(c)(7)(B)(v).

6

The plaintiff must support each element of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, _i.e._, with the manner and degree of evidence required at the successive stages of the litigation." _Lujan_, 504 U.S. at 561. When the facts underlying the plaintiff's jurisdictional allegations are unchallenged, the court is only required to satisfy itself that the "well-pleaded factual averments in the plaintiff's...complaint," if true, would establish that the plaintiff has standing. In _Valentin v. Hospital Bella Vista_, the First Circuit elaborated:

> In performing this task, the court must credit the plaintiff's well-pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw all reasonable inferences from them in her favor, and dispose of the challenge accordingly...

254 F. 3d 358, 363 (1st Cir. 2001). In contrast, when the defendant:

> controvert[s] the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffer[s] materials of evidentiary quality in support of that position...the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.

_Id._

As explained earlier, in their opposition to Varsity's motion for summary judgment, defendants suggested that the TCA does not authorize Varsity to sue because Varsity is not a telecommunications provider and because it has no property interest in the building site, having assigned the lease to Varsity Wireless Investors, LLC ("Varsity Investors"), another company. Defendants did not request a ruling on the issue, but requested that the Magistrate postpone ruling on the plaintiff's motion for summary judgment until discovery has closed and defendants file their own motions for summary judgment arguing, among other things, that plaintiff lacks standing. Therefore, defendants do not now challenge the accuracy of the jurisdictional facts asserted by the plaintiff. Accordingly, at this stage, it is unnecessary to decide whether the evidence establishes Varsity's standing. Rather, the court is only required to satisfy itself that the "well-pleaded factual allegations" in the complaint and the affidavits, if proven, would be sufficient to establish standing. Valentin, 254 F. 3d at 363.

For the reasons explained in the Report and Recommendation, the Varsity's allegations and affidavits are sufficient to establish that Varsity's interests fall within the "zone of interests" protected by the TCA and, therefore, the court's authority to consider Varsity's motion for summary judgment on its

merits. See R&R at 12-13.[5] In particular, plaintiff has submitted an affidavit from Christopher J. Davis, manager of Varsity and Varsity Investors, which holds the lease for the site, stating that Varsity is authorized to act on behalf of Varsity Investors. See Docket No. 56-1. Varsity was "adversely affected" by the challenged conduct within the meaning of 47 U.S.C. §332(c)(7)(B)(v) when, acting on behalf of Varsity Investors, it was denied an Application for a zoning variance to build the proposed facility. This case, therefore, is comparable to Liberty Towers, LLC v. Zoning Hearing Bd. of Twp. Lower Makefield, Bucks Cnty., Pa., where the plaintiff had standing to appeal the township's denial of its application for a zoning variance to build a new telecommunications facility under the TCA, even though the plaintiff was "not a telecommunications carrier or service provider but merely constructs and operates wireless telecommunication facilities." 748 F. Supp. 2d 437, 442 (E.D. Pa. 2010).

The court is adopting the Magistrate's recommendation to decide the issues raised in the plaintiff's motion for summary

---

[5] The allegations also satisfy Article III's requirements: Varsity's inability to build the Facility, from which it would profit, is a concrete and particularized injury traceable to the defendants' denial of the variance--which makes it illegal for Varsity to build--and redressable through an injunction ordering defendants to reconsider the decision.

judgement without prejudice. Accordingly, defendants may challenge the accuracy of plaintiff's jurisdictional allegations in connection with their anticipated motion(s) for summary judgment.

In view of the foregoing, it is hereby ORDERED that:

1.    The Magistrate Judge's Report and Recommendation (Docket No. 86) is ADOPTED and INCORPORATED pursuant to 28 U.S.C. §636.

2.    American's Motion to Strike (Docket No. 57) is ALLOWED in part and DENIED in part as described in the Report and Recommendation at 3-4.

3.    For the reasons stated in the Report and Recommendation, Varsity's Motion for Summary Judgment (Docket Nos. 40) is DENIED without prejudice.

4.    This case continues to be referred to the Magistrate Judge for pretrial proceedings, including a Report and Recommendation on any dispositive motions.


_____
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VARSITY WIRELESS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 15-11833-MLW |
| v. ) | |
| ) | |
| TOWN OF BOXFORD, et al., ) | |
| ) | |
| Defendants. ) | |

REPORT AND RECOMMENDATION ON PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT
[Docket No. 40]

August 23, 2017

Boal, M.J.

In this action, plaintiff Varsity Wireless, LLC ("Varsity") challenges the Town of Boxford's denial of Varsity's application for a special permit and dimensional variances for the construction and operation of a multi-user monopine wireless communication facility (the "Facility"). Specifically, Varsity alleges that the denial is in violation of both Section 704 of the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7) (the "TCA"), and also state law. Varsity has moved for partial summary judgment on Count 2 of the Amended Complaint, which alleges that the Defendants' denial of Varsity's application is not supported by substantial evidence in violation of 47 U.S.C. § 332(c)(7)(B)(iii). Docket No. 40.[1] For the following reasons, this Court recommends that the District Judge assigned to this case deny Varsity's

---

[1] On June 27, 2016, the District Court referred this case to the undersigned for full pretrial proceedings, including report and recommendation on dispositive motions. Docket No. 33.

motion without prejudice.

I.      PROCEDURAL BACKGROUND

Varsity filed its complaint against defendants Town of Boxford (the "Town"), Boxford

Zoning Board of Appeals (the "Board"), and Board members Kathleen O'Sullivan Fortin,

Barbara Jessel, and David Peterson on May 12, 2015. Docket No. 1. On June 29, 2015, Varsity

filed an amended complaint. Docket No. 13.

On September 9, 2016, this Court granted the motion to intervene filed by certain abutters

and immediate neighbors to the proposed Facility. Docket No. 48. This Court also issued a

scheduling order. Docket No. 49.[2] Thereafter, the parties have engaged in discovery.

On September 7, 2016, one day before the Scheduling Conference, Varsity filed the

instant motion for partial summary judgment. Docket No. 40. Defendants filed an opposition on

September 28, 2016.[3] Docket No. 53. On October 12, 2016, Varsity filed a reply. Docket No.

55. The Court held oral argument on July 19, 2017.

Because it appeared that the Court did not have all of the materials considered by the

Board in its decision, on July 20, 2017, this Court ordered the parties to confer and submit any

materials considered by the Board that were not already part of the summary judgment record.

See Docket No. 74. The parties requested, and the Court granted, two extensions of the deadline

for submitting the complete record. See Docket Nos. 77-80.

On August 10, 2017, Defendants filed a number of documents in response to the Court's

order. However, it appeared that the parties still had not provided a copy of the complete record

---

[2] On the parties' requests, the deadlines in the scheduling order have been extended several
times. Docket Nos. 61, 65, 68, 71.

[3] At oral argument, the Intervenors' counsel explicitly joined the Defendants' opposition. See
also Docket No. 58 at 1, n. 1.

2

before the Board, as the Court was unable to find three letters referenced in the Board's decision. Accordingly, the Court ordered the parties to direct the Court to where it could find the letters in the record or submit them forthwith. Docket No. 83. In response, counsel for Defendants filed a letter stating that the Board had not been able to locate the referenced letters. Docket No. 84. Later that day, counsel filed, without any explanation, what appeared to be two of the three referenced letters. Docket No. 85.

II.    FACTUAL BACKGROUND

A.    Scope Of The Record

Varsity has filed a motion to strike certain evidence submitted by the Defendants because that evidence is outside of the administrative record of the hearings before the Board. Docket No. 57. Varsity is correct that where, as here, the Court's analysis is directed to whether the Board's written decision is supported by substantial evidence, the Court "is confined to the administrative record, absent a claim of procedural irregularity." Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 22 (1st Cir. 2002). However, the Defendants have also raised the issue of whether Varsity has standing to bring this action. The Court finds that it is appropriate to consider evidence regarding this issue, even if such evidence was not part of the administrative record. Accordingly, the Court recommends that the District Judge grant in part and deny in part Varsity's motion to strike. Specifically, the Court finds that it is appropriate to consider the following: Docket No. 54-10, Docket No. 54-11, Docket No. 54-12. All of these documents pertain to Varsity's legal interest in the Facility and/or the Site. In addition, Varsity does not move to strike the first two paragraphs of the Perkins Affidavit (Docket No. 54-1) or the documents to which they refer (Docket No. 54-3, Docket No. 54-4, Docket No. 54-5, Docket No. 54-13, and Docket No. 54-14). This Court will not consider the remaining exhibits submitted by

3

the Defendants, which were not part of the administrative record and pertain to the Town's
arguments regarding effective prohibition.

B.    Facts[4]

1.    Varsity And Verizon Wireless

Varsity is engaged in the business of developing "personal wireless communications
facilities" for the deployment of personal wireless services.[5]  Bell Atlantic Mobile of
Massachusetts Corporation Ltd. d/b/a Verizon Wireless ("Verizon") is licensed by the Federal
Communications Commission ("FCC") to provide personal wireless services in the
Commonwealth of Massachusetts, including in the Town.[6]

Varsity maintains that Verizon has a significant gap in coverage within Boxford in the
area of Main Street, Lawrence Road, and many of the adjacent neighborhood streets within west
central Boxford.[7]  In order to close that gap, Varsity proposed to build the Facility at 12

---

[4] In accordance with the Court's ruling on Varsity's motion to strike, the facts are derived from
the following materials to the extent those materials reflect evidence contained in the
administrative record before the Board or which refer to standing issues: (1) Plaintiff's Varsity
Wireless, LLC's Statement of Undisputed Facts in Support of Its Motion for Partial Summary
Judgment (Docket No. 41) ("Pl. SOF"); (2) the Affidavit of Francis D. Parisi in Support of
Plaintiff Varsity Wireless, LLC's Partial Motion for Summary Judgment and the exhibits
attached thereto (Docket No. 46) ("Parisi Aff."); (3) the Combined Statement of Undisputed
Facts with Defendants' Objections (Docket No. 54) ("Def. Resp."); (4) the Combined Statement
of Undisputed Facts with Defendants' Objections and Varsity Wireless, LLC's Reply to
Defendants' Objections (Docket No. 56) ("Pl. Reply"); and (5) the Affidavit of Christopher J.
Davis in Support of Varsity Wireless LLC's Partial Motion for Summary Judgment (Docket No.
56-1) ("Davis Aff.").

[5] Parisi Aff. ¶ 2.

[6] Pl. SOF ¶ 2.

[7] Pl. SOF ¶ 3.

4

Mortimer Road, Boxford, Massachusetts (the "Site").[8]  Martin D. Sholomith, the owner of the

Site, and Varsity entered into a lease agreement by which Sholomith granted Varsity the

exclusive right to build the Facility in the Property.[9]

In June 2014, Varsity assigned all of its rights to the Site to Varsity Wireless Investors,

LLC ("Varsity Investors").[10]  Varsity is the Managing Member of Varsity Investors.[11]

Christopher J. Davis is the manager of both Varsity and Varsity Investors.[12]  As manager, Davis

has the authority to allow either entity to act on behalf of, or together with, the other and to ratify

actions taken by one entity on behalf of the other.[13]  Varsity is and was authorized to act on

behalf of Varsity Investors in prosecuting the application for a special permit and variances with

the Board as well as maintaining this appeal.[14]

Varsity was not a party to Verizon's Tower Use Agreement.[15]  Rather, the agreement was

between Verizon and Varsity Investors.[16]  Defendants, in their submission dated September 28,

2016, maintain that Verizon has terminated its lease agreement with Varsity Investors, leaving

Varsity and Varsity Investors without any provider committed to using the proposed Facility for

---

[8] Ex. A to Pl. SOF at Varsity 000011.

[9] Ex. A to Pl. SOF at Varsity 000011; see also Docket No. 54-10.

[10] Def. Resp. ¶ 59.

[11] Davis Aff. at ¶ 3.

[12] Davis Aff. at ¶ 4.

[13] Davis Aff. at ¶ 4.

[14] Davis Aff. at ¶ 5.

[15] Def. Resp. ¶ 60.

[16] Def. Resp. ¶ 60.

personal wireless communications.[17]  At oral argument, Varsity maintained that it currently has a lease agreement with Verizon.  The Town does not dispute that there is currently such a lease agreement but asserts there may have been a period of time between the filing of the instant suit and today that there was no agreement.

2.     The Application For A Special Permit And Variances

The Site is located in the Residential-Agricultural (R-A) zoning district.[18]  The proposed Facility includes, without limitation, a 150-foot multi-carrier tower camouflaged to appear as a pine tree ("monopine"),[19] a 47-foot by 69-foot compound surrounded by an 8-foot high wooden stockade fence, VZW's panel antennas, GPS antenna, an ice bridge, cabling, an equipment shelter, radio communications equipment within the equipment shelter, a generator for backup power, and a pad mounted transformer.[20]

On or about November 20, 2014, Varsity filed its application for a special permit and dimensional variance (height), and on March 19, 2015, Varsity amended the application to formally include Verizon as a co-applicant and to request a variance to permit exterior mounted antennas (collectively, the "Application").[21]  Specifically, and as relevant for purposes of this motion, Varsity sought the following:

(1) Varsity sought a special permit for the construction of a wireless telecommunication

---

[17] Def. Resp. ¶ 61.

[18] Pl. SOF ¶ 20.

[19] The proposed faux pine branches extend above the tower structure by six feet to a total height of 156 feet.  Pl. SOF ¶ 22.

[20] Pl. SOF ¶ 21.

[21] Pl. SOF ¶ 19; Exs. A, D to Pl. SOF.

facility, which requires compliance with the special permit provisions of the Zoning Bylaw. Among other things, Section 196-30(C) of the Bylaws requires the Board to consider negative impacts on the adjacent neighborhood.[22]

(2) Varsity also sought a variance from Section 196-11(C)(1) of the Town's Bylaws, which provides that "[t]he only wireless communication facilities allowed are freestanding monopoles, with associated antenna and/or panels to be installed internally within the monopole." The proposed Facility is a monopine telecommunications tower, which is a monopole disguised as a pine tree. According to Varsity, its coverage needs do not allow for the internal concealment of the antennas at this height and location.[23]

(3) In addition, Varsity sought a variance from Section 196-22(C)(5) of the Town's Bylaws, which provides for facilities to be constructed "at the minimum height necessary to accommodate the anticipated present and future use but in no event to exceed 120 feet . . ." The proposed monopine is 150 feet above ground level. Varsity maintains that this proposed height is the minimal height necessary to close a significant gap in wireless coverage.[24]

The Board held three public hearings on Varsity's Application on January 22, 2015, February 26, 2015, and April 2, 2015.[25] At the public hearings, the Board heard testimony

---

[22] Ex. G to Pl. SOF at Varsity 000458-459.

[23] Ex. A to Pl. SOF at Varsity 000013.

[24] Ex. A to Pl. SOF at Varsity 000014.

[25] Pl. SOF ¶ 23.

7

presented by Varsity and the public.[26]  With the Application and during the public hearings,

Varsity submitted evidence regarding: (1) the design of its proposed Facility; (2) Verizon's

existing coverage; (3) the extent of Verizon's gap within this identified area of Boxford, (4) the

lack of feasible alternatives; (5) the need for and associated benefits of the camouflaged

monopine design over the Bylaw's requirement for a tower utilizing internally mounted

antennas; (6) satisfaction of the legal standards for the issuance of the requested relief; (7) a

viewshed analysis; and (8) drive test data regarding coverage.[27]

    3.    The Board's Decision

    a.    Denial Of Variance Requests

At the hearing on April 2, 2015, the Board voted 3-0 to deny Varsity's application.[28]  The

Board filed its written decision with the Boxford Town Clerk on April 15, 2015 (the

"Decision").[29]

With respect to Varsity's request for variances, the Board noted that Varsity chose not to

specifically address the requirements for proving a variance under Massachusetts law, which

allows the Board to grant variance relief upon a finding that:

> . . . owing to circumstances relating to the soil conditions, shape, or
> topography of such land or structures and especially affecting such land or
> structures but not affecting generally the zoning district in which it is
> located, a literal enforcement of the provisions of the ordinance or by-law
> would involve substantial hardship, financial or otherwise, to the petitioner
> or appellant, and that desirable relief may be granted without substantial
> detriment to the public good and without nullifying or substantially
> derogating from the intent or purpose of such ordinance or by-law.

---

[26] Pl. SOF ¶ 24.

[27] Pl. SOF ¶ 25.

[28] Pl. SOF ¶ 26.

[29] Pl. SOF ¶ 27.

M.G.L. c. 40A, § 10.[30]  Rather, Varsity argued that the variance was required under the

provisions of the TCA so long as it could provide evidence of a significant gap in coverage for

the area of Boxford.[31]  The Board was split as to whether or not the requirements of the TCA

could supplant the necessary finding of hardship under Massachusetts law.[32]  Nevertheless, the

Board reviewed Varsity's application for a variance pursuant to the TCA.[33]

The Board denied Varsity's request for a variance from the internal mount requirement of

Section 196-22(C)(1).[34]  In so doing, the Board found that Varsity had not proven a significant

gap in coverage.[35]  It noted that Varsity had provided "much testimony, supported by various

charts and visual aids, defining the gap in 4G wireless coverage in Boxford."[36]  While the

various data charts presented by Varsity Wireless showed differing levels of coverage, the Board

was not persuaded that the differences in intensity of coverage yielded an actual deficiency in

functional use of the data network in Boxford.[37]  The Board also stated that it was not satisfied

that the Verizon Wireless 4G network is, in practice, suffering from widespread dysfunction and

---

[30] In its decision, the Board summarized the provisions of M.G.L. c. 40A, § 10.  The Court finds it important to cite the entirety of the statute.

[31] Ex. G to Pl. SOF at Varsity 000448, 000451.

[32] Ex. G to Pl. SOF at Varsity 000448.

[33] Ex. G to Pl. SOF at Varsity 000448.  At oral argument, the Town's counsel represented that the TCA is specifically incorporated into some town's bylaws.  The TCA is not so incorporated in the Town's bylaws.

[34] Ex. G to Pl. SOF at Varsity 000447-449.

[35] Ex. G to Pl. SOF at Varsity 000448-449.

[36] Ex. G to Pl. SOF at Varsity 000448.

[37] Ex. G to Pl. SOF at Varsity 000448.

inability to successfully initiate and hold a call in Boxford.[38]  In addition, the Board stated that:

> To the contrary, the abutters and abutters Counsel provided extensive testimony showing a systematic review of coverage levels on the Verizon Wireless' network in the area surrounding the Property.  The abutters also provided multiple accounts of Verizon Wireless representatives and publications describing the robust, well-established 4G network in Boxford. Specifically, abutters provided a coverage map from the Verizon wireless website, evidence of written exchanges between Verizon Wireless representatives and Boxford residents, and documentation of a study of signal strength performed by abutters using Verizon Wireless equipment all indicating that there is not a significant gap in coverage in Boxford.[39]

Varsity argued that the Site is the only available location upon which they can site a wireless communications facility in order to address the perceived gap in coverage.[40]  The Board found that Varsity did not make such a showing.[41]  The Board noted that Varsity evaluated other potential sites within a search with a radius of 0.5 miles but Varsity did not provide evidence justifying the very limited size or placement of its search ring.[42]  Abutters argued, and the Board agreed, that Varsity's search for potential sites was cursory and insufficient to show that the Site was the only option available to Varsity.[43]

The Board also denied Varsity's request for a variance from the height limitation of Section 196-22(C)(5).[44]  First, the Board found that the additional 30-foot height requiring the

---

[38] Ex. G to Pl. SOF at Varsity 000448-449.

[39] Ex. G to Pl. SOF at Varsity 000449.

[40] Ex. G to Pl. SOF at Varsity 000449.

[41] Ex. G to Pl. SOF at Varsity 000449.

[42] Ex. G to Pl. SOF at Varsity 000449.

[43] Ex. G to Pl. SOF at Varsity 000449.

[44] Ex. G to Pl. SOF at Varsity 000450-452.

variance was particularly detrimental to the neighborhood because the 156-foot pole would be more than twice the height of the existing tree cover and would be an obtrusive eyesore negatively affecting the surrounding neighborhoods.[45] The Board found that Varsity's own testimony and documents show that the variance was unnecessary in light of the potential harm to abutters and neighboring properties: Verizon would see a significant benefit from a tower of compliant height but would prefer to have a larger tower.[46]

     b.    <u>Special Permit</u>

    The Board denied Varsity's request for a special permit.  In so doing, the Board noted, among other things that:

> The Board weighed heavily the testimony from both Varsity Wireless and abutters regarding the potential negative impact of the proposed cellular tower on the Premises and the surrounding neighborhood. Varsity Wireless provided a Qualitative Market Investigation authored by Andrew G. LeMay dated January 20, 2015, in which Mr. LeMay provided specific evidence that a survey of multiple properties in several Massachusetts, Vermont and New Hampshire towns were not negatively impacted in value despite their proximity to a cellular facility. Mr. LeMay testified at the January 22, 2015 hearing that the placement of a cellular tower had little impact on home sales values for the areas included in this study. The abutters provided testimony at that same hearing that the homes included in Mr. LeMay's study were not impacted to the same degree that the homes in the neighborhoods surrounding the 12 Mortimer Property would be by the placement of the proposed cell tower.  The abutters noted that the cell towers were not visible from the homes in Mr. LeMay's report. The Board also received, however, multiple letters from local Boxford-area real estate brokers who emphatically stated that a cellular tower at the Property would have a significant detrimental impact on the abutter home values.  The Board considered these letters from Boxford real estate professionals and found them more persuasive than the testimony provided to support Varsity Wireless' application based on the fact that the Qualitative Market Investigation (or its supplement, dated February 26, 2015) was not representative of the market conditions in Boxford or, more specifically, the neighborhood surrounding the 12 Mortimer Road Property which has

---

[45] Ex. G to Pl. SOF at Varsity 000451.

[46] Ex. G to Pl. SOF at Varsity 000451-452.

unique attributes of rural beauty, rolling lawns, quiet nature trails, and proximity (within 0.5 miles) to three significant historical properties from which the cellular tower would be highly visible.[47]

For these, and other reasons,[48] the Board denied Varsity's request for a special permit.[49]

III.   ANALYSIS

A.   Standing

As a preliminary matter, the Defendants have raised the issue of whether Varsity has standing to bring this action. Docket No. 53 at 18-20. The Defendants state that Varsity is a spec tower developer, not a wireless services provider, no longer holds a lease for the Site, and never had an agreement with Verizon for use of the proposed Facility. Id. at 18-19. Defendants argue, therefore, that summary judgment is not appropriate because they should be able to conduct discovery in order to determine whether Varsity is a real party in interest or otherwise has statutory standing to prosecute TCA claims. Id. at 19.

The TCA provides, in relevant part, that "[a]ny person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v). "The term 'person' includes an individual, partnership, association, joint-stock company, trust, or corporation." 47 U.S.C. § 153(39). Varsity was one of the applicants before the Board and it has been adversely affected by the Board's denial of the Application as it cannot build the

---

[47] Ex. G to Pl. SOF at Varsity 000459.

[48] In its recitation of the factual background, the Court has focused on those aspects of the Board's decision that Varsity challenges in its motion for summary judgment.

[49] Ex. G to Pl. SOF at Varsity 000460.

proposed Facility. See, e.g., Liberty Towers, LLC v. Zoning Hearing Bd. of Tp. Lower Makefield, Bucks Cnty., Pa., 748 F. Supp. 2d 437, 442 (E.D. Pa. 2010) (entity that constructs and operates wireless communication facility, as opposed to carrier or service provider, has standing). To the extent that Defendants argue that Varsity is not the real party in interest because it is Varsity Investors who now holds a lease for the Site, Varsity has averred that it has the authority to act on behalf of or with Varsity Investors. Davis Aff. ¶¶ 4-6. See, e.g., Brehmer v. Planning Bd. of Town of Wellfleet, 238 F.3d 117, 122-123 (1st Cir. 2001). Accordingly, the Court finds that Varsity has standing to bring this action under the TCA.[50]

B.   The TCA

"[T]he TCA reflects Congress's intent to expand wireless services and increase competition among . . . providers." Green Mountain Realty Corp. v. Leonard, 688 F.3d 40, 48 (1st Cir. 2012) (quoting Sw. Bell Mobile Sys., Inc. v. Todd, 244 F.3d 51, 57 (1st Cir. 2001)). It "works like a scale that, inter alia, attempts to balance two objects of competing weight: on one arm sits the need to accelerate the deployment of telecommunications technology, while on the other arm rests the desire to preserve state and local control over zoning matters." ATC Realty, LLC v. Town of Kingston, New Hampshire, 303 F.3d 91, 94 (1st Cir. 2002) (citations omitted). Accordingly, "[t]he TCA preserves state and local authority over the siting and construction of wireless communication facilities, subject to five exceptions specified in the Act." Second Generation Props., L.P. v. Town of Pelham, 313 F.3d 620, 627 (1st Cir. 2002). Two of those exceptions are relevant for purposes of the instant motion. First, the TCA requires that any

---

[50] At oral argument, the Court explored with the parties whether there was a mootness issue given that the Defendants had maintained in their September 28, 2016 filing that Varsity no longer had an agreement with Verizon. Docket No. 53 at 19. The parties agreed that Varsity currently has an agreement with Verizon. Accordingly, the Court does not believe there is a mootness issue.

decision by a local government "to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).  Second, the TCA provides that "[t]he regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof— . . . shall not prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).[51]

    C.    <u>The Substantial Evidence Test</u>

Here, Varsity moves for summary judgment on Count 2 of the Amended Complaint only, which alleges that the Defendants' denial of Varsity's application is not supported by substantial evidence in violation of 47 U.S.C. § 332(c)(7)(B)(iii).  "The TCA's substantial evidence test is a procedural safeguard which is centrally directed at whether the local zoning authority's decision is consistent with the applicable zoning requirements." <u>ATC Realty, LLC</u>, 303 F.3d at 94 (citations omitted).  The substantial evidence test is highly deferential to the local board. <u>Second Generation Props.</u>, 313 F.3d at 627 (citing <u>Penobscot Air Servs., Ltd. v. Fed. Aviation Admin.</u>, 164 F.3d 713, 718 (1st Cir. 1999)).  The First Circuit has described the substantial evidence test as follows:

> The 'substantial evidence' standard of review is the same as that traditionally applicable to a review of an administrative agency's findings of fact.  Judicial review under this standard, even at the summary judgment stage, is narrow . . . Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . [T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

<u>Id.</u> (quoting <u>Sw. Bel Mobile Sys., Inc.</u>, 244 F.3d at 58).

---

[51] For ease of reference, the Court refers to this requirement as the "effective prohibition" provision.

14

Although the substantial evidence standard is deferential, it is not a rubber stamp. <u>See</u> <u>Sw. Bell Mobile Sys.</u>, 244 F.3d at 59. A local board "is not free to prescribe what inferences from the evidence it will accept and reject, but must draw all those inferences that the evidence fairly demands." <u>Green Mountain Realty Corp.</u>, 688 F.3d at 50 (internal quotations and citation omitted).

In conducting substantial evidence review, this Court considers only evidence contained in the administrative record, i.e., the evidence presented to the Board. <u>Second Generation Props.</u>, <u>L.P.</u>, 313 F.3d at 628 (citing <u>Nat'l Tower, LLC v. Plainville Zoning Bd. of Appeals</u>, 297 F.3d 14, 20-21 (1st Cir. 2002)). "The substantial evidence question is ordinarily resolved on the record before the court and no trial is required." <u>Nextel Commc'ns of the Mid-Atlantic, Inc. v.</u> <u>Manchester-by-the-Sea</u>, 115 F. Supp. 2d 65, 66 (D. Mass. 2000) (citing <u>Town of Amherst v.</u> <u>Omnipoint Comms.</u>, 173 F.3d 9, 16 n. 7 (1st Cir. 1999)).

D.   The Court Is Unable To Determine Whether The Board's Decision
Is Supported By Substantial Evidence Without A Complete Record

Although Varsity styled its motion as a motion for summary judgment, and submitted a statement of "undisputed facts," <u>see</u> Docket No. 41, the usual summary judgment standard of review does not apply. Here, the question is whether the Board's decision denying Varsity's Application was supported by substantial evidence. "The 'substantial evidence' standard of review is the same as that traditionally applicable to a review of an administrative agency's findings of fact." <u>Second Generation Props.</u>, 313 F.3d at 627 (quoting <u>Sw. Bell Mobile Sys.</u>, 244 F.3d at 58). For motions for summary judgment, under the APA, the Court's review "is limited to the administrative record," <u>Lovgren v. Locke</u>, 701 F.3d 5, 20 (1st Cir. 2012), and the "'entire case' on review is a question of law." <u>Am. Bioscience, Inc. v. Thompson</u>, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (citation omitted). Thus, a district court's role in considering summary

judgment in a case such as this one is not to resolve contested fact questions which may exist in the underlying administrative record, but rather to determine the legal question of whether the Board's decision was supported by substantial evidence. Cf. Northwest Bypass Group v. United States Army Corps of Eng'rs, 552 F. Supp. 2d 97, 107 (D.N.H. 2008) (internal quotations omitted); see also Commonwealth Dep't of Pub. Welfare v. Sec. of Agriculture, 984 F.2d 514, 525 (1st Cir. 1993) (explaining that the relevant inquiry "is not whether the facts [can establish some dispute], but rather, whether the administrative record, now closed, reflects a sufficient dispute concerning the factual predicate on which [the agency] relied . . . to support a finding that the agency acted arbitrarily or capriciously.").

As discussed earlier, the court's review is confined to the record before the zoning board. Nevertheless it must have a complete record to conduct such review. The court "must consider the record as a whole." Nextel Commc'ns of the Mid-Atlantic v. Town of Brookline, 520 F. Supp. 2d 238, 248 (D. Mass. 2007). See also Industrial Tower and Wireless, LLC v. Haddad, 109 F. Supp. 3d 284, 296 (D. Mass. 2015) (the court "must review that written record as a whole"). Indeed a reviewing court is charged with taking into account any contradictory evidence in the record. Nextel Commc'ns of Mid-Atlantic v. Town of Sudbury, 01-11754-DPW, 2003 WL 543383, at *9 (D. Mass. Feb. 26, 2003). This is particularly necessary because substantial evidence questions are resolved on the record before the court and no trial is required. Nextel Commc'ns, 115 F. Supp. 2d at 66. As Judge Lindsay stated: "In order to make [a substantial evidence determination], I must review the entire record, taking into account evidence that is both supportive of and contradictory to the Board's conclusions." Cellco P'ship v. Town of Grafton, 336 F. Supp. 2d 71, 79 (D. Mass. 2004).

Here, however, it does not appear that the parties have submitted the complete record that

the Board considered in its decision denying Varsity's application. As referenced above, the Board's decision refers to materials that are not part of the record before this Court. For example, the parties have not submitted the February 15, 2015 letter from the Boxford Historical District Commission. Despite the Court granting an opportunity to the parties to confer and submit the entire record, the parties have not done so. Also, they have submitted documents in response to the Court's request but have not made clear that these documents were those considered by the Board. See Docket Nos. 84, 85. Without the complete record, this Court is unable to determine whether the Board's decision is supported by substantial evidence.[52] Accordingly, the Court recommends that the District Court deny Varsity's motion for summary judgment without prejudice at this time.[53]

## IV.   RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case deny without prejudice Varsity's motion for partial summary judgment on Count 2 of the Amended Complaint.

## V.   REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the

---

[52] While it may not be necessary for the parties to submit a certified record in all cases, the downside of not doing so is evident here.

[53] The Court recognizes that the TCA calls for the expeditious resolution of cases. See 47 U.S.C. § 332(c)(7)(B)(v) ("The court shall hear and decide such action an expedited basis."). In light of the parties' failure to provide a complete record, however, the Court is unable to issue a decision on the merits at this time.

proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE